Next case on this morning's stock is a case of Marriage of Small Juanita Small versus Anne Jeffrey Small. We have Mr. James Stout for the appellant and we have Mr. John Clark for the applicant. And Mr. Stout you may begin when you are ready. Council do you want to sit can you hear or you want to move up you can move your chair around? But if it changes you could move your chair up or even stand up As you all know my name is James Stout I'm with the law firm law office of James E. Stout and I represent the appellant Jennifer Small. First of all like I said I apologize for my voice I've been ill for the last couple three days and when it turns cold like this your honors I have a tendency sometimes to get laryngitis so I'll do the best I can. Okay well I think we can all hear you as long as you're not straining yourself too. I will be but I'll go ahead and do it. First of all the brief that we submitted on behalf of Mr. Small the states are positioned on all the issues as well as I can in the states. For me to sit here and go through each page of that briefing is a waste of everybody's time. I've set out as for the social security issue, the threat plan, the division of property, the attorneys fees and everything that we have in there I don't think I can say it any more, any better than I had a lot more time. But I will be able and would be willing to entertain questions that you all have. I think probably the biggest issue that I'm here on is probably the thing about social security which I don't believe any court that I've found in Illinois other than maybe the criminal case has ever had a case like that. I don't think the criminal case has said anything about social security. We know by federal statute that social security benefits cannot be divided by a state court. It's preempted. The Supreme Court, I think it's Heredia, has stated that. The U.S. Supreme Court. So we cannot do that. But what we're doing, what we're asking the court to do, and I ask that the trial court consider that Mrs. Small is going to get social security. Mr. Small has been a federal civil servant and under their pension plan which is actually an annuity could not partake of the social security administration. And as a result, she gets a windfall of a social security benefit that was definitely earned during her marriage but cannot divide it. Ohio has taken a different approach. Several other states as I stated in my brief, Ohio, New Jersey, Pennsylvania, New York, Washington, I believe Arizona and Texas have done some. They've done some type of set-offs of the people who are receiving the social security against the people who are not receiving the social security. And Pennsylvania, I think the Goldblatt case is the one that we feel is probably the fairest if you take what the recipient of social security is going to receive and offset that against what the pension plan is. And then divide the pension plan. In addition to that, so there's another way of doing it, I think Ohio has done it, which they have taken, they have a different viewpoint. I don't believe Illinois has done that. As I stated in the brief that in the Crook case, the marriage of Crook, the Supreme Court left open that issue and in fact cited the Pennsylvania, Ohio and Arizona cases saying that in this case the parties have not argued yet. But in addition to the way that Mr. Small is not receiving any credit for that or any offset of that, it was also ordered to pay the elected to take the survivor's benefit, which benefits Mrs. Small. And as a result of that, that costs money out of his share of the pension. Judge Weber, the trial court, as court has seen, divided the federal pension or annuity 50% each. But then again ordered Mr. Small to take what's called the survivor's benefit, which is an additional monthly charge, as I stated in the brief, about $370 a month, which reduces his amount, not the 50%. So in addition to not receiving any offset for the social security, he's having to pay more than what the judge said, 50% of his annuity. Is he entitled to survivor benefits from her social security at the time of her death pursuant to statute? It would only be if they've not remarried and there's a certain period of time, but he probably will not be. But there is a possibility based on the length of the time between the marriage? There is. Okay. I'm not an expert on social security benefits, but I do know that because I know in a death there is. A divorce may or may not be. But if they're in a death, if you're a survivor and you don't remarry for a period of, I think it's up to 10 years, you can go back and recover the survivor's benefit. But that case I don't believe is here yet. So then the other issues, if I could. Do you believe that Crook leaves it open for the court to consider that offset? Yes, Judge. I think the language that I cited in my brief in the Crook case said that because it said that the last sentence I quoted, thus we leave the resolution of the issue for another day. I think they didn't accept it. They didn't rule on it because they weren't asked to rule on it. But they did, in fact, in their opinion, cite the Pennsylvania case, the Cornblatt case, and the Walker case, which is the Ohio case, and again the Kelly case, which is the Arizona case, which Arizona is a little bit different than Illinois. I think Arizona is a community property state. The Texas case that cited Texas as a community property state, which is similar to our marital property, but not entirely because they have all these commingle and separate man-eats and things that we do not have here in Illinois. But I think the court did leave it open, and I think this is a case that the court could do that, I could enter into that case or make that ruling that we were just asking that it be remanded and said, Judge, the member of the trial court consider it based on those facts. Now, it's been argued that we have waived that by not bringing that to the court's attention at the time. I did mention that, and the judge specifically denied my contention that he considered the Social Security benefits in awarding that Mr. Small would not be able to get any of the Social Security benefits, and none of the Social Security benefits of Mrs. Small was considered in his ruling. He specifically ruled, I believe, as I stated in the reply brief, that he wasn't considering that. He rejected that argument. As such, we're asking the court to remand this on this issue and have him consider those offsets, and whether he accepts the Ohio, whether he accepts the Pennsylvania, or whether he accepts one of the other statutes or one of the other states' formulas for go-ahead. I have to not find, and I'm getting ready for death on this appeal, any state, any case in Illinois that had considered it other than the protest. And for that reason, I ask that. The other issue that I bring is the thrift savings plan, which, again, is a qualified savings plan. A hundred percent of that went to Mrs. Small. None of it went to Mr. Small at all, and there was no specific reasons why the court did it. He just said she gets a hundred percent of the thrift savings plan. As the court looks at the order, at the judgment of the trial court, all of the cash assets seem to go to Mrs. Small. None of it, all of it, with the exception of a couple of certificates of deposit that were issued or were given to Mr. Small by his mother. And that's the other issue of what is clear and convincing evidence, what's a gift. In this case, nobody other than the parties testified as to what non-marital property was. Mrs. Small testified as to her inherited farm from her parents, although there was a deed introduced that one of her siblings deeded his interest to the two other siblings he had. And then Mrs. Small didn't understand whether she owned a third or half of that farm. There was also income from that farm. Mr. Small acknowledged that that was inherited property. Part of it was inherited, came from an inheritance, which is non-marital property. But the judge rejected the contention or the testimony of Mr. Small that a house in Bridgeport, Illinois, in Lawrence County, which was his mother, Mr. Small's mother's house, was deeded to Mr. Small and his brother. Plus there were certificates of deposit that were given from his mother to his brother and to Mr. Small. And that money was a gift. Well, the judge seemed to say that the problem with that was Mr. Small paid the income tax on the interest that he sees as in it. Well, he'd have to. Somebody would have to. It was in his name. Apparently they used his Social Security number, which was reported to the IRS by the bank, and Mr. Small thought reported it as income, which he would normally if it's under your FEIN number or your Social Security number. You have to do that. So for that reason, the judge just completely excluded any of the testimony of Mr. Small as to the issue of his non-marital property that he received as a gift. It wasn't quite the thing. I think it had anything to do with the fact he was an internal revenue agent. It probably was. More than any of us would have meant to report that interest on your tax return. He had to, I think, Your Honor. If he hadn't have done it, we would have been in trouble for paying taxes and not paying taxes on it. It had to do it. Well, okay. Somebody had to do it. It was either going to be him. It wasn't his mother's. She had given it to him. Just like when the income from the farm that Mrs. Small owned was reported on their tax return to their joint tax return also when they were married. So there was some farm income from the farm that was from Mrs. Small on her tax return. But there's also this interest income from the CDs that were given to Mr. Small by his mother. So I guess maybe the distinction here is that the CDs were actually given to Mr. Small and his brother, not just Mrs. Small. It was not just to my father. But the same thing happened as to the farm that Mrs. Small inherited. It didn't just all go to her. It went to her income. So they had to have this partnership and things like that. So there was other things involved in this. But the judge said they were not clear in convincing evidence that it was a gift. Well, just the same evidence as to that that was a gift as to clear in convincing that the farm was inherited. Same thing. Now, looks like I'm down to my one minute here. Is that on my 15 minutes? The only thing I'd say then as to the attorney's fees, Mrs. Small got a bunch of cash. She got a lot of money. She got a $20,000 thing in addition to all the equity in the house, all her retirement, half my client's retirement. So to require my client to pay her attorney's fees seems excessive because she had the cash. She had other funds, other assets in which to be able to do that. So we're asking the court to reverse that as well and remand it back to Judge Webber. The $20,000 for dissipation, the dissipation was the money was used for expenses of the parties. And I will stop right now, Your Honor. I state that in the record. Thank you very much. Thank you. You'll have the opportunity to rebut. Mr. Clark? Yes. May it please the Court, Mr. Stout? You can go ahead. Yeah. So Mr. Stout is correct in what he says or suggests that the trial court, I think, largely discounted substantial portions of this client's testimony in trial. There were significant credibility issues, I think, that Mr. Stout's client brought before the trial court, which are well reflected in the record. And I'll get into it a little more in detail. But there's more than credibility issues that this client brought. You know, he brought, I mean, on this retirement issue that is before the court, he took what I think was an unreasonable and extreme position at trial, which was not, as Mr. Stout is suggesting today, some sort of Social Security offset, but was that my client should get zero, nothing out of that retirement account. And that was his position at trial, and that's what he argued. And that's what Mr. Stout had argued, because that's what his client was telling him to argue, and that's what he said. And because of that, there was no evidence at trial about how much Social Security benefits my client is going to get in some sort of offset. It wasn't raised, it wasn't discussed, it wasn't argued. His position was extreme at trial, and therefore we didn't get into this. In addition, and that basically is my waiver argument that I raised in my brief. In addition, if this court will, and I know it will, look at Judge Weber's order, what he ordered was that the respondent, Mr. Small, elect a survivor benefit. That's what the judgment says. That was necessary in order to ensure that should Mr. Small pre-seize my client, that the benefits would continue. That's all the judgment said, and that seems to me to be perfectly appropriate. I can go into some detail, and I went through my brief, but this credibility issue on the CDs, he's asked at trial specifically, do you have any certificate of deposit in your name? He says, no. It goes on from there, and then he says, well, and I show him a loan application he filled out where he claims a $12,000 certificate in his name. Oh, yes, I have that. It goes on, and I show him a tax return where he has, he declares like $4,000 something in interest income. I said, where does this come from? Oh, well, there's another $80,000 or $90,000. I mean, it was just, to call it a massive credibility issue in a trial court I think is fair, and I know I hear arguing from my client, but I think that is what the record reflects. He brought this on himself significantly. With regards, and this gets into the, you know, issue of Mr. Stout talking about, you know, this marital, non-marital issue. If you can't believe him on the CDs, and then he comes into court without any documentation, without any other witnesses, without any paperwork of any sort. He says, oh, yeah, yeah, that was gifted to me. You know, that seems to me to be a pretty tough sell before a trial court, and that's the problem Mr. Stout's client had, at least so it seemed to me. Coupled with all of that, one of these issues on appeal is this $20,000, and the background for that is we start this proceeding, and Mr. Small is working for the Internal Revenue Service making in the upper $60,000 a year. My client is making in the low $20,000 a year, $22,000, $23,000. I filed a motion, a petition for temporary relief, an order was entered directing Mr. Small to make certain payments at the house, the taxes and utilities, those sorts of things. As it turns out, he did not make those payments out of his income, even though he was earning substantially more than my client. He took them out of marital assets. Not only did he take them out of marital assets, but whenever he took them out of marital assets to pay a bill for my client, he simultaneously reimbursed himself for a like amount. So, I mean, it's just, to me, mind-boggling the kind of things he was doing at the pretrial level. Another example, in the record it shows that as the house my client was living in did not have a regular monthly mortgage payment, it was an annual interest-only payment. It comes due while this case is pending. Communication takes place between Mr. Stout and myself. This is in the record. And basically we say, we'll pay half of this interest payment, you pay half. No, I say, would you please make this payment out of marital assets that Mr. Small totally controls? No. They say, you pay half, we'll pay the other half. My client goes out, scrimps up, comes up with her half. He then takes his half out of the marital assets that he refused to do in the first place. So it's just instance after instance after instance in this case of Mr. Small thumbing his nose at court orders, coming into court and just all but making up stories, whatever suits his fancy at the moment. And so, you know, this court has these issues to support that it's going to have to decide. And they are, of course, important to my client and equally important, I'm sure, to Mr. Stout's client. But the issues, I think, need to be viewed in the context of the entire record. And the entire record, I think, supports the sort of credibility issues and conduct issues that were present throughout this trial. And I think that when those issues are viewed in that context, I can't see any abuse of discretion by the trial court. I mean, if you take a step back from it, you have a 34-year marriage. If you look at the judgment, the trial court essentially divided the assets essentially equally. We believe it should be affirmed. Questions? Thank you so very much. Let me say one last thing. I brought my daughter with me who's a law student. Good luck. Good luck and congratulations. Glad to have you here. We knew she wasn't your client. Mr. Stout, you have rebuttal. Just a little bit, Your Honor. Mr. Clark said that my client found his nose at Judge Weber's order about paying the expenses. He paid the expenses. He paid his own expenses. He paid the taxes on the monies that came out of Merrill Asset. The earnings that both parties made were Merrill Assets also that were not considered by anybody in there. So as I pointed out in a brief that what dissipation of the assets are of Merrill Assets was decided in the – was recently decided in 08 by the Holt House case of the Second District, which said that dissipation is a use of Merrill property for the sole benefit of one of the spouses for a purpose unrelated to the marriage. At the time, it was that the marriage is undergoing an irreconcilable difference. And as I pointed out, the marriage had already broken down in 05, and he was older than 07 to make these expenses, and they had been making those expenses out of Merrill funds. So I believe that he didn't thumb the nose at the judge's orders. He paid the expenses. Mr. Clark goes through one incident, and that was I believe after the trial and in between what we're doing now, that my client didn't, in fact, pay his half. He didn't, in fact, pay the – Mrs. Small paid her half. We think that the $20,000 for dissipation – I don't believe there was dissipation of the assets. It was used for Merrill funds, for Merrill expenses for both parties. It wasn't just used to take out the gamble, give it away, or any of those other things. So I think the judges err in ruling that as a dissipation of assets. We're asking that this case be reversed, and we demand it back for consideration on the issues that we've raised here today. Are there any other questions? Thank you, Mr. Stout, and thank you, Mr. Clark. And we'll take the matter under advisement rather willingly and do court.